United States District Court
for the
District of Maine

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2019 MAY 24  P 1: 57

DEPUTY CLERK

|  |  |
|---|---|
| JASON G. LITALIEN<br><br>Plaintiff<br><br>v.<br><br>CITY OF BIDDEFORD<br><br>Defendant | Case No. 2:19-cv-237-LEW<br><br>**COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |

## PARTIES

1.  Plaintiff, Jason G. Litalien of 8 Sapphire Dr., Biddeford, ME 04005, a citizen of Biddeford, Maine, represents 6,761 citizens who voted "no" on the 2014 referendum question, believing this vote was protected speech under the First and Fourteenth Amendments of the U.S. Constitution and similar articles of the Maine Constitution, and therefore the City could not ignore the will of the people and proceed to install parking meters against the citizen's wishes.[1] Plaintiff files this complaint *Pro Se*.

---

[1] The ballot for November 4, 2014 included a referendum question which stated: "Shall the City of Biddeford install parking meters in the greater downtown Biddeford area?" The referendum failed by a vote of 6,761 opposed and 959 in favor, thus prohibiting the City from installing parking meters in the greater downtown area.

1

2. Defendant, City of Biddeford, located at 205 Main St., Biddeford, ME 04005, is a municipality incorporated under the laws and Constitution of the State of Maine, and is a corporate entity capable of suing and being sued. City of Biddeford, includes the Mayor, the City Council, the City Manager, and employees and agents involved with the installation of parking meters. Defendant is sued in its official capacity.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this constitutional challenge under 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to hear and adjudicate state law claims. Each and all of the acts alleged herein were done by defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of the City of Biddeford.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because the Defendant is a municipality in this district and 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims in this action occurred in this district.

## STATEMENT OF THE FACTS

5. On November 4, 2014 the City of Biddeford held a general election. The ballot included a citizen's referendum which stated: "Shall the City of Biddeford install parking meters in the greater downtown Biddeford area?" The referendum failed by a vote of 6,761 opposed and 959 in favor, thus prohibiting the City from installing parking meters in the greater downtown area.

6. During the Spring of 2018, the City was considering the installation of parking kiosks and Plaintiff attended a City Council meeting to explain why the City was not allowed to

install the kiosks, because in fact, the units are parking meters. The City Solicitor provided an explanation that the City was installing kiosks and not meters, therefore they were not violating the referendum.

7. During the Summer of 2018, the City Council voted to install parking kiosks in several lots in the greater downtown Biddeford area. At the September 4, 2018 meeting, Councilor Robert Quattrone stated that he would not support the proposed ordinance to purchase the units because he felt the City was just playing with words by using "kiosks" instead of "meters" and that the documentation provided by Cale, the company with the winning proposal, called the units "meters."[2] He also stated that he "would stick with how the referendum went and vote no."

8. On October 23, 2018, Plaintiff filed a complaint in the York County Superior Court for a temporary restraining order (TRO), preliminary injunction, and permanent injunction to prohibit the City from installing parking meters in violation of the 2014 referendum. The TRO was denied.

9. On November 13, 2018, the Defendant filed a motion to dismiss based on Rule 80(b) of the Maine Rules of Civil Procedure, which required a challenge to the September 4th approval of a parking fee schedule within 30 days.

10. In Plaintiff's reply, he argued that Rule 80(b) did not apply to elected bodies nor was his complaint about the fee schedule approved by the Council, but rather the installation of parking meters in violation of the referendum.

---

[2] City Council Meeting, September 4, 2018, Councilor Quattrone at about 18:30 states: "I think we're just playing with words by calling them kiosks." He continued to state: "In fact, in the bit document that was provided its even called meters in there." Plaintiff expects to receive the referenced documents through discovery.

3

11. On or about November 29, 2018, the City of Biddeford installed parking meters in several parking lots located within the greater downtown Biddeford area in violation of the 2014 referendum. The City posted a photo to its official Facebook page that showed the new unit with "Instructions to Pay Meter" and "Downtown" on the front.[3] The post also stated that the "kiosks" were installed in downtown parking lots.[4]

12. On November 30, 2018, Plaintiff filed a motion for reconsideration of the TRO based on a violation of his First Amendment right to free speech that protects his vote because the prior day the City installed parking meters in the downtown area. This motion was denied.

13. Sometime in December 2018, Justice O'Neil recused himself due to his relationship with the Defendant's attorney. The case was transferred to Cumberland County Superior Court and on May 13, 2019, Justice MaryGay Kennedy dismissed Plaintiff's complaint, stating that the complaint was not filed in a timely manner and therefore the Court did not have subject matter jurisdiction. The dismissal was based on a 30-day window to challenge administrative actions by the City Council, the issue of a First Amendment challenge was not addressed.

## FIRST CAUSE OF ACTION

I. **The City has violated U.S. Constitution protected free speech, due process, and equal protection rights of 6,761 citizens who voted "no" on the 2014 referendum question.**

    A. The City installed parking meters in violation of the referendum.

---

[3] See Exhibit 1.

[4] Along with the photo of the new parking meter, the Facebook post included the following text: "The City of Biddeford's parking kiosks were installed in downtown parking lots today. In order to ensure that staff is available to assist users with the new equipment, hourly parking permits will not be available from the kiosks until 7:00 AM on Monday, December 3. Patrons may continue to use downtown parking lots for short-term parking free of charge until that time."

4

14. On or about November 29, 2018, Defendant's employees or agents installed units in several downtown parking lots in order to charge drivers to park in these lots. The charges are paid monthly or hourly. Defendant claims these units are "kiosks" and therefore they are not parking meters and as such, do not violate the 2014 referendum.

15. Regardless of Defendant's attempt to claim a kiosk is not a meter, both a kiosk and a meter charge for parking in increments of time, thus accomplishing the same goal. A kiosk is only an updated meter and a newer technology is not treated differently from the previous technology. There are many types of parking meters from many companies and all these units are used to collect a fee for parking. Some accept coins, some accept cash or credit cards and some of the meters are used for multiple spaces, as the meters Defendant installed are used, and others remain assigned to one parking space.

16. The City meters require persons parking in the downtown municipal lots to walk up to the unit and input their license plate number, amount of time requested, and a method of payment. This is indistinguishable from a traditional parking meter which requires the person to input coin currency until they reach the amount of time they would like to remain in the spot.

17. An example of moving from traditional meters to the new smart meters can be found in Portland on the streets that surround the courthouse. Portland has some of the older meters that accept coins along some streets and alongside Lincoln Park, Portland has replaced those individual coin-operated meters with new meters, similar to what the City of Biddeford installed. Portland has demonstrated that a parking kiosk and a parking meter are indistinguishable in function and in purpose. The words "meter" and "kiosk" are interchangeable in this context because they accomplish the same purpose and Defendant cannot

5

expect to simply use a different word to violate the referendum. If that were the case, then every statute, ordinance, and law could be avoided by changing a word.

18.  The Supreme Court addressed the idea of changing technology in *Heller* and how newer technology is treated the same as older technology. The Court stated that the idea that only arms available in the 18th century are protected by the Second Amendment was "bordering on the frivolous." *District of Columbia v. Heller*, 554 U. S. 570 (2008). Modern firearms are protected under the Second Amendment the same as muskets. Claiming the units are a newer technology and therefore not parking meters so the referendum does not apply, flies over the border and straight into frivolous territory. No reasonable argument can be made to the contrary.

**B.  Defendant was aware that they in fact purchased parking meters, not kiosks.**

19.  The Defendant cannot claim that they purchased kiosks because not only did the units arrive and were installed with the phrase "Instructions to Pay Meter" on the front, but as stated by Councilor Quattrone, the documentation from the company contracted to provide the units refers to the units as meters. Therefore, when the Council approved the purchase of the units from Cale on September 4, 2018, the members of the Council were aware that they were approving the purchase of parking meters, not kiosks, and they willingly violated the 2014 referendum, and in turn, the First Amendment right, equal protection right, and due process right of 6,761 citizens, including the Plaintiff.

20.  Furthermore, the City knew that they had installed parking meters because after a few days they placed a sticker on the front of the unit to cover the phrase "Instructions to Pay Meter." The City attempted to cover-up what they had done and this is a clear admission of guilt and a statement of acceptance of guilt.

21.     Each councilor and the Mayor presumably saw the same paperwork as Councilor Quattrone. The Biddeford Charter requires the Mayor to sign spending warrants, which means that he must have signed for this purchase with full knowledge that the manufacturer calls the units meters.[5] No reasonable person can look at paperwork calling the unit a meter and then tell the public that they are not buying parking meters, they are instead buying parking kiosks. Even with all the evidence against them, the city leaders continue to claim they installed kiosks and therefore they did not violate the referendum.

C.     **The installation of parking meters violates constitutional protections.**

22.     "There can be no more definite expression of opinion than by voting on a controversial public issue." *Miller v. Town of Hull, Mass.*, 878 F.2d at 532 (1989). "Voting has an expressive component in and of itself." *Nevada Commission on Ethics v. Carrigan*, 564 U.S. at 133 (2011) (Alito, J., concurring in part and concurring in judgment). "If an ordinary citizen casts a vote in a straw poll on an important proposal pending before a legislative body, that act indisputably constitutes a form of speech." *Id* at 134. "A voter's franchise is a personal right." *Coleman v. Miller*, 307 U.S. 433, 469-470 (1939).

23.     If 6,761 citizens vote to prohibit the installation of parking meters and only 959 vote in favor of allowing meters, then the act by the City of installing parking meters is an unconstitutional abridgment of Plaintiff's affirmative rights to freedom of speech under the United States Constitution, First and Fourteenth Amendments.

24.     The installation of parking meters also violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and similar guarantees in the Maine

---

[5] Article II Section 3 states: " Every resolve or order appropriating money, having passed the City Council, shall forthwith be presented to the Mayor for approval and signature."

7

State Constitution by denying Plaintiff free speech rights allowed to others who have voted on other referendum questions as well as other protections of state and federal law.

25. The City cannot provide an emergency or public safety reason for their blatant disregard of the citizen's vote, therefore, the Defendant's actions violate the due process guarantee of the Fourteenth Amendment to the United States Constitution by taking away protected rights without due process.

D. **The referendum was intended to include downtown streets and parking lots.**

26. Defendant cannot argue that the referendum was only intended to include streets and not surface lots. The referendum was written by the City Solicitor and there is a great difference between choosing to use "downtown Biddeford streets" instead of "downtown Biddeford area." By choosing to use "area," the City Solicitor chose to include "the surface included within a set of lines," as defined by Merriam-Webster's Dictionary.[6] The "greater downtown Biddeford area" therefore includes the surface lots listed as part of downtown on the various maps published by the City.

27. Regardless of the Defendant's attempts to circumvent the 2014 referendum by claiming that they installed kiosks, not meters, or that parking lots were never intended to be included in the "greater downtown Biddeford area," Maine state law requires that the Court look to the intent of the organizers of the referendum. "Citizen-initiated legislation must be interpreted liberally to effectuate its purpose." *Opinion of the Justices*, 100, ¶ 59, 162 A.3d 188, (2017). Citizen-initiated legislation requires the Court to "ascertain the will of the people" rather than the will of the Legislature. *Id* at ¶ 7.

---

[6] Definition of *area* - "the surface included within a set of lines." https://www.merriam-webster.com/dictionary/area.

8

28. In five affidavits that were submitted to the York County Superior Court, each resident claims that the intent was always to include parking lots and streets. The organizers were trying to ban all paid parking downtown to help businesses. Some residents, who were involved in the writing of the referendum state that the City Solicitor suggested using the term "parking meters," this of course could have been forward thinking by the attorney to try and limit the referendum to parking meters and not all paid parking. *See* Affidavit of Grady Sexton, Donna Day, Howard Hanson, Vincent Keely, and Tina Maurice-Richardson.[7]

29. There is no question that the lots are part of downtown. If one could exempt certain areas within downtown, then they could argue that City Hall is not part of downtown either because it is not in the street, but rather, built on a lot beside the street, just as the parking lots with the parking meters are. One of the lots in question used to be the location of the fire station and when that building was torn down the parking lot was created. Would the Defendant claim that the fire station, located a block from City Hall, was not part of downtown? The fire station was a part of downtown because the land it sat on falls within the lines of what the City has designated as "downtown." Just because the building is gone, that does not take the land out of downtown. The land is in the same place that it was when the fire station stood on it. In fact, the Defendant's own post on Facebook on November 29, 2018 stated that the "kiosks" were installed "downtown," thus negating any argument by the Defendant that the lots are not part of downtown.

## SECOND CAUSE OF ACTION

**II.** **The City has violated Maine Constitution protected free speech and due process rights of citizens who voted "no" on the 2014 referendum question.**

---

[7] Affidavits are included with exhibits.

9

30. Article 1, Section 4 of the Maine Constitution states: "Every citizen may freely speak, write and publish sentiments on any subject, being responsible for the abuse of this liberty…" Article 1, Section 6A of the Maine Constitution states: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."

31. Whereas it is established in paragraphs 22-25 that the free speech clause of the First Amendment and due process and equal treatment clauses of the Fourteenth Amendment of the US Constitution protects a citizen's vote, it is logical to accept that the free speech, due process, and equal protection clauses of the Maine Constitution also protect a citizen's vote in state and municipal elections.

32. The City, therefore, abridged the free speech, due process, and equal protection rights of Plaintiff and 6,760 other voters under the Maine Constitution when it installed parking meters in violation of the 2014 referendum.

### THIRD CAUSE OF ACTION

**III.  The City of Biddeford violated its own charter and state law by ignoring the vote of the citizens.**

**A.   The referendum is binding.**

33. The City Charter states that: "All issues decided by referendum shall be binding on the City Council and not merely advisory." Article XII Section 7, City Charter, City of Biddeford, Maine, March 5, 2018. Justice Nichols, concurring with the majority decision in *Bird v. Town of OOB*, stated "[a]ll power is inherent in the people, proclaims the Declaration of Rights of Maine's Constitution. The power of referendum should be regarded as the exercise of a power

retained by the people, and not as one granted to them." *Bird v. Town of Old Orchard Beach*, 426 A.2d 370 (1981) (Nichols, J., Concurring).

34. The City Charter also states that "[a]ll referendum questions are to be decided by a majority vote at a general election or special election called for the purpose of voting on the referendum." *Id* at 30. In addition to the Charter granting citizens the power of approving a binding referendum, Article IV of the Maine Constitution also protects the citizen's rights to direct initiative (citizen's referendum). *Me. Const.* Article IV §§ 17-22.

35. There is no question that the referendum in 2014 prohibited the City from installing parking meters. It is also undeniable that the City installed parking meters, as evidenced by the photo posted by the City that shows "Instructions to Pay Meter" on the front and the fact that the provider of the units refers to the units as meters. It is also without question that an "area" encompasses everything within a set of defined lines, meaning that the surface parking lots fall within the "greater downtown Biddeford area" as expressed in the referendum.

36. Therefore, the Defendant is bound by the Biddeford City Charter to adhere to the 2014 referendum and may not violate it by installing parking meters on the streets or in municipal lots/garages, which Defendant did in fact do, on or about November 29, 2018.

**B. Only another referendum may overturn the current referendum.**

37. The citizen direct-initiative is guaranteed to Maine "electors" in Article IV of the Maine Constitution. The object of a citizen initiative must always be to "ascertain the will of the people." *Lewis v. Webb*, 3 Me. 326, 337 (1825). "Our Primary consideration, therefore, must be that by the initiative amendment the people, as sovereign, have retaken unto themselves legislative power and that a particular undertaking by them to exercise that power shall be

11

liberally construed to effectuate the purpose." Opinion of the Justices, 275 A.2d 800, 803, (1971).

38. Whereas the referendum is binding on the City and the citizen initiative is protected by both state law and the Charter, only another referendum may overturn the currently enforceable referendum. The City is thus prohibited from unilaterally installing parking meters in violation of the citizen-initiative referendum question from 2014. They must present a new referendum to allow this action.

## CONCLUSION

39. It is undeniable that the City installed parking meters, based on the evidence the City provided in its Facebook post and from the documents referenced by Councilor Quattrone at the City Council meeting on September 4, 2018.

40. It is undeniable that the citizen-initiated referendum that prohibited the City from installing parking meters applies to all of downtown, not only streets.

41. It is undeniable that a parking kiosk and a parking meter function in the same manner and therefore are indistinguishable from each other.

42. It is undeniable that the installation of parking meters in violation of the 2014 referendum violates U.S. constitutional rights, Maine constitutional rights, and the City of Biddeford Charter.

43. Therefore, unless enjoined by this Court, Defendant will continue to infringe Plaintiff's constitutionally protected rights to enjoy free speech, due process, and equal protection and thereby cause irreparable injury, as damages alone cannot fully compensate plaintiff for the ensuing harm. Every day that Defendant uses its parking meters 6,761 citizens

are subjected to the violation of their constitutional rights.[8] This threat of injury from continuing violations requires injunctive relief. The protection of the citizen's freedom of speech "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347 (1976) ("[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury.")

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

    (a) Enter judgment against the defendant;

    (b) Enter a declaratory judgment that the 2014 referendum is valid and that it applies to the entire greater downtown area, not only streets;

    (c) Enter a declaratory judgment that the Defendant did, in fact, violate the 2014 referendum when it installed parking meters in the downtown municipal lots;

    (d) Enter a declaratory judgment declaring the acts of the Defendant to be a violation of plaintiff's constitutional rights to freedom of speech, due process, and equal protection under the Maine Constitution and the U.S. Constitution;

    (e) Enter a declaratory judgment declaring the acts of the Defendant to be a violation of of the City Charter of Biddeford;

    (f) Issue a preliminary and permanent injunction enjoining defendants, their agents, servants, employees, and officers of the City of Biddeford from continued use of the parking meters installed in the downtown surface lots;

---

[8] As of May 24, 2019, Defendant has violated 6,761 citizen's rights 175 times (days) for a total of 162,415 counts.

(g) Require the Defendant to remove the parking meters from the surface lots within 3 days of this judgment; and,

(h) Order such other and further relief as the Court deems just and proper under the circumstances.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.A.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

May 24, 2019

Jason G. Litalien
8 Sapphire Dr.
Biddeford, ME 04005

14